```
              UNITED STATES DISTRICT COURT                          FILED
              NORTHERN DISTRICT OF ALABAMA                     03 FEB 26 PM 4:17
                   NORTHEASTERN DIVISION
                                                                U.S. DISTRICT  T
                                                               N.D. OF ALABAMA
```

ON THE CURVE, INC.,                )
JAMES W. DENTON, and               )
CHUCK BROWNING,                    )
                                   )
    Plaintiffs,                    )
                                   )
vs.                                )   Civil Action No. CV-02-S-2864-NE
                                   )
VERSA-MATIC TOOL, INC.,            )   **ENTERED**
INDEX CORPORATION,                 )
                                   )
    Defendants.                    )   FEB 2 6 2003

MEMORANDUM OPINION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

    Plaintiff On the Curve, Inc. ("On the Curve"), and defendant Versa-Matic Tool, Inc. ("Versa-Matic"), entered into an agreement on September 10, 1998, by the terms of which On the Curve became an authorized distributor for Versa-Matic's line of industrial pumps.[1] Versa-Matic was acquired by defendant IDEX Corporation ("IDEX") on June 6, 2001. Several months later, on September 23, 2001, IDEX terminated the distributorship agreement, and selected one of On the Curve's competitors, Brownlee-Morrow Engineering Company, Inc., to be the exclusive distributor of its industrial pumps. On the Curve commenced this suit on November 25, 2002, asserting claims for breach of contract, tortious interference with existing contractual and business relationships, promissory estoppel, fraud, fraudulent suppression, negligent misrepresentation, and conspiracy.[2] This court has jurisdiction, based upon the parties' complete diversity of citizenship and the requisite amount in controversy. *See* 28 U.S.C. § 1332(a)(1). The action now is before the court on defendants' motion to dismiss or, in the alternative, to transfer the action to the United States District

---

[1] Defendants' motion to dismiss or transfer, Tab A (distributorship agreement).
[2] Complaint.



Court for the Western District of Pennsylvania (doc. no. 5). Upon consideration of the pleadings, plaintiffs' response, and evidentiary materials filed by both parties, the court concludes that the alternative aspect of defendant's motion is due to be granted.

## I. DISCUSSION

As an introductory note, this court observes that the parties' distributorship agreement contains the following choice-of-law provision:

> **Governing Law:** The Agreement is and shall be deemed to have been entered into in Pennsylvania and shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania (except the conflict of laws provisions thereof).[3]

"Plaintiffs do not dispute the enforceability of this clause."[4]

### A. Whether the Forum Selection Provision Encompasses This Action

Defendants contend that the distributorship agreement's forum selection clause requires this action to be transferred to the Western District of Pennsylvania. The pertinent language is contained in the following paragraph:

> **Default:** *Upon a default by Distributor under this Agreement*, Versa-Matic may pursue any and all rights of Versa-Matic set forth in this Agreement, or which are available at law or in equity, all of which shall be non-exclusive and cumulative. Distributor shall indemnify and hold Versa-Matic harmless from and against any and all liabilities, damages, costs and expenses (including without limitation attorneys' fees and costs) arising in whole or in part from any actual or alleged failure by Distributor to comply with any provision of this Agreement. *In the event of any litigation regarding this Agreement*, Versa-Matic shall be entitled to recover legal fees and costs of litigation. *Distributor consents to the exclusive jurisdiction and exclusive venue of the state and federal courts sitting in Allegheny County, Pennsylvania in any lawsuit or action arising under, relating to or mentioning this Agreement, including without limitation, any action to recover any sums due hereunder.*[5]

---

[3] Defendants' motion to dismiss or transfer, Tab A (distributorship agreement), at 7.

[4] Plaintiffs' brief opposing transfer, at 8.

[5] Defendants' motion to dismiss or transfer, Tab A (distributorship agreement), at 6 (emphasis supplied).

Plaintiffs claim that the foregoing provisions do not apply to this action, because the language purporting to designate the federal and state courts sitting in Allegheny County, Pennsylvania as "the exclusive jurisdiction and . . . venue of . . . any lawsuit or action arising under, relating to[,] or mentioning [the distributorship] Agreement" is contained within the "Default" paragraph, which begins with the phrase "[u]pon a default by Distributor under this Agreement. . . ."[6] In contrast, this action was commenced *by* the distributor *against* Versa-Matic and IDEX.

Plaintiffs base their argument on the principle of *ejusdem generis*, a canon of construction meaning that, "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *Black's Law Dictionary* 535 (7th ed. 1999); *see also Norfolk & Western Railway Co. v. American Train Dispatchers Association*, 499 U.S. 117, 129, 111 S. Ct. 1156, 1163, 113 L. Ed. 2d 95 (1991) ("Under the principle of *ejusdem generis*, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration.").

The first sentence of the paragraph in contention does begin with a phrase describing a specific eventuality: "Upon a default by Distributor under this Agreement, . . . ." The third sentence of that same paragraph begins with an entirely different phrase, however, and addresses a far more expansive set of eventualities: "In the event of *any litigation* regarding this Agreement, . . . ." The fourth (and final) sentence of the paragraph is just as comprehensive as the third, stating that: "Distributor consents to the exclusive jurisdiction and exclusive venue of the state and federal courts sitting in Allegheny County, Pennsylvania in *any lawsuit or action arising under, relating to*[,] *or mentioning this Agreement, including without limitation*, any action to recover any sums due

---

[6] *Id.*

hereunder."

The question that presents itself, therefore, is whether the principle of *ejusdem generis* serves to limit the scope of the final two sentences of the "Default" paragraph to only those actions commenced by Versa-Matic against plaintiffs to recoup losses sustained as a result of "a default by Distributor under this Agreement"? This court finds it does not.

Implicit in the application of *ejusdem generis* as a canon of construction is the requirement that the general term either immediately follow the specific terms, or otherwise clearly be shown to be subordinated to the specific subjects.

> For example, in the Sunday Observance Act 1677, the language *no tradesman, artificer, workman, labourer or other person whatever* was held not to include a coach proprietor, a farmer, a barber, or a real-estate agent; the general words *or other person whatever* were held confined to persons with similar occupations to those specifically listed — despite the breadth of *whatever*. Similarly, if a lease forbade the tenant to keep *kerosene, camphene, burning fluid, or any other illuminating material*, the general language at the end would not include a light bulb, though it is indisputably an "illuminating material" if the language is taken literally. . . .

Bryan A. Garner, *A Dictionary of Modern Legal Usage* 308 (2d ed. 1995); *see also Black's Law Dictionary, supra* at 535 ("For example, in the phrase *horses, cattle, sheep, pigs, goats, or any other barnyard animal,* the general language *or any other barnyard animal* — despite its seeming breadth — would probably be held to include only four-legged, hoofed mammals."). *Cf., e.g. Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 121 S. Ct. 1302, 1306, 149 L. Ed. 2d 234 (2001) (*ejusdem generis* utilized to determine the scope of section 1 of the Federal Arbitration Act).

The "Default" paragraph of the parties' agreement clearly encompasses two distinct topics: the first two sentences address Versa-Matic's rights in the specific event of a default by the distributor, while the remaining two sentences expansively designate the jurisdiction and venue of "any lawsuit or action arising under, relating to[,] or mentioning this Agreement, including without

-4-

limitation, any action to recover any sums due hereunder."[7] The doctrine of *ejusdem generis* is neither necessary nor appropriate to discern the meaning of the two subjects. *Cf., United States v. Aguilar*, 515 U.S. 593, 615, 115 S. Ct. 2357, 2369, 132 L. Ed. 2d 520 (1995) (Scalia, J., *concurring in part and dissenting in part*) (Justice Scalia observed that the principle of *ejusdem generis* should not limit the scope of general statutory language accompanied by specific terms because, "[a]lthough something of a catchall, the omnibus clause is *not* a general or collective term following a list of specific items . . . . Rather, *it is one of the several and distinct independent prohibitions contained in the* [statute].") (emphasis supplied).

**B.     Whether the Forum Selection Provision Should Be Enforced**

"It is well settled that forum selection clauses that have not been attained through fraud, overreaching[,] or undue influence are fully enforceable." *Vitricon, Inc. v. Midwest Elastomers, Inc.*, 148 F. Supp. 2d 245, 247 (E.D.N.Y. 2001) (citing, *e.g., The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 92 S. Ct. 1907, 1914-15, 32 L. Ed. 2d 513 (1972)). Indeed, a district court should decline to enforce a forum selection provision only if the party opposing transfer meets the heavy burden of showing that enforcement would serve to effectively deprive it of its day in court, or offend public policy. *See The Bremen*, 407 U.S. at 18, 92 S. Ct. at 1917.

As a threshold matter, the court must determine whether the forum selection provision contained in the parties' distributorship agreement, but tucked under the subheading of "Default," was reasonably communicated to plaintiffs. *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir.1995) ("The legal effect of a forum selection clause depends in the first instance upon whether its *existence* was reasonably communicated to the plaintiff.") (emphasis supplied). "[T]he issue of

---

[7] The term "this Agreement," used throughout the distributorship agreement, clearly refers to that contract as a whole, and not merely that portion discussing Versa-Matic's rights upon a distributor's default.

reasonable notice is a question of law." *Effron*, 67 F.3d at 9.

Plaintiff James W. Denton, On the Curve's corporate secretary and treasurer, confirms that all plaintiffs "review[ed] the 'Default' provision" before executing the agreement.[8] Thus, the *existence* of the forum selection language was reasonably communicated to plaintiffs. Nevertheless, Denton goes on to say that,

> when On The Curve first received the Agreement from Versa-Matic and reviewed the default provision, it was my and On The Curve's understanding that the provision applied only in the event that On The Curve defaulted under the Agreement. In fact, the subject clause begins with "Upon default by Distributor." It was my understanding that, in the event of any such default, On The Curve was agreeing that Versa-Matic could sue it in Pennsylvania. I did not agree or interpret this clause to limit On the Curve's right to sue in Alabama for anything that Versa-Matic might do wrong. Because I had this understanding and knew that On The Curve would not do anything wrong to constitute a default under the Agreement, I accepted the requirements of the clause. In sum, I agreed to be sued in Pennsylvania only if my company defaulted in its performance under the Agreement. I never agreed that if defendants breached the Agreement or harmed my company that On the Curve must sue defendants in Pennsylvania. I do not believe that the Agreement can be interpreted that way. If I had read the clause to have the meaning that defendants now try to attribute to the clause, I would not have signed the Agreement.[9]

Plaintiffs' interpretation of the language contained in the Default paragraph is contrary to its plain meaning, clearly referencing in the third sentence "the event of *any litigation* regarding this Agreement," and emphasizing in the succeeding sentence the distributor's "consent to the exclusive jurisdiction and exclusive venue of the state and federal courts sitting in Allegheny County, Pennsylvania *in any lawsuit or action arising under, relating to[,] or mentioning this Agreement . . .*"[10] The term *"this Agreement,"* used throughout the distributorship agreement and Denton's declaration, clearly refers to the parties' contract as a whole, and not to some subpart thereof.

---

[8] Plaintiffs' opposition to transfer, Tab A (Denton declaration) ¶ 4.

[9] *Id.*

[10] Defendants' motion to dismiss or transfer, Tab A (distributorship agreement), at 6 (emphasis supplied).

Further, the placement of the forum selection clause in the "Default" paragraph does not invalidate its plainly-written language. *See Effron*, 67 F.3d at 9 ("A forum selection clause stated in clear and unambiguous language, *although in fine print*, is considered reasonably communicated to plaintiff in determining its enforceability.") (emphasis supplied); *Paper Express, Ltd., v. Pfankuch Maschinen*, 972 F.2d 753, 757-58 (holding that a forum selection clause was enforceable even though written in *extremely fine* print, *and*, in *German*); *Jewel Seafoods, Ltd. v. M/V Peace River*, 39 F. Supp. 2d 628, 634 (D.S.C. 1999) (refusing to estop enforcement of forum selection clause that was "specif[ied] with clarity, albeit in boilerplate language"); *Shore Slurry Seal, Inc. v. CMI Corp.*, 964 F. Supp. 152, 156-57 (D.N.J. 1997) (holding that a forum selection clause was enforceable, even though the parties did not discuss the provision during their negotiations and the clause was in fine print, because both parties were sophisticated business entities); *Orix Credit Alliance, Inc. v. LeGallo*, No. 9255, 1994 WL 263434 at *3 (Mass. App. Div. July 11, 1994) ("In the absence of fraud, a party remains bound by the terms of any contract he has signed, whether he has read and understood it or not.").

In short, plaintiffs' erroneous interpretation of the language of the "Default" paragraph, in the absence of any evidence of fraud — and particularly the absence of evidence indicating that plaintiffs were fraudulently induced to accept the forum selection clause itself, as opposed to the contract as a whole[11] — does not suffice to carry plaintiffs' "heavy burden" of showing sufficient

---

[11] *Cf. Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974) (clarifying one aspect of the test enunciated in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), and holding that a party resisting the application of a forum-selection clause contained in an international agreement on the basis of fraud must focus upon the inclusion of the clause itself, and not the contract generally).

In *The Bremen* we noted that forum-selection clauses "should be given full effect" when "a freely negotiated private international agreement [is] unaffected by fraud. . . ." This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or

reason for invalidating that provision. *See The Bremen*, 407 U.S. at 18, 92 S. Ct. at 1917.

### 1. Forum *non conveniens*

Plaintiffs also argue that the forum selection provision should not be enforced because Alabama is a significantly more convenient forum for prosecuting the action than Pennsylvania. Plaintiffs offer three such arguments: (i) four of the twelve witnesses that plaintiffs plan to examine reside in Alabama, while only three witnesses reside in Pennsylvania (the remaining five witnesses reside in other states); (ii) plaintiffs have limited financial resources to prosecute this action in Pennsylvania; and (iii) Versa-Matic's superior bargaining power in drafting the distributorship agreement "mitigates in favor of Alabama."[12]

The Supreme Court has stated that a plaintiff seeking to avoid enforcement of a forum-selection clause must

> show that trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

*The Bremen*, 407 U.S. at 18, 92 S. Ct. at 1917.

The court begins its assessment of plaintiffs' arguments by noting that the "Governing Law" clause clearly stipulates that the distributorship agreement "shall be deemed to have been entered into in Pennsylvania," and that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania (except the conflict of law provisions thereof)."[13] That undisputed fact weighs in favor of transferring this action to Pennsylvania. Further, Versa-Matic's

---

coercion.

*Scherk*, 417 U.S. at 519 n.14, 94 S. Ct. at 2457 n.14 (emphasis in original) (internal citations omitted).

[12] Plaintiffs' brief opposing transfer, at 16; Weber declaration (doc. no. 8) ¶ 2.

[13] Defendants' motion to dismiss or transfer, Tab A (distributorship agreement), at 7.

principal place of business is located in Pennsylvania, and venue is proper in that state.[14] While this court has little doubt that litigation in Pennsylvania will be more costly and difficult for plaintiffs, the vague logistical concerns raised in their brief have not been demonstrated to be so insurmountable that, for all practical purposes, plaintiffs will be deprived of their day in court. Indeed, plaintiffs provide no evidence as to their actual financial condition, but simply speculate that litigation in Pennsylvania may not be within their means.[15] Accordingly, plaintiffs' "financial hardship" argument does not suffice to invalidate the forum selection provision. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594, 111 S. Ct. 1522, 1527-28, 113 L. Ed. 2d 622 (1991) (forum selection clause designating Florida was enforced against Washington plaintiff, because she did not satisfy the heavy burden of proof required to set aside the clause on grounds of inconvenience); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 515 (9th Cir. 1988) (holding that an otherwise valid forum selection clause should not be invalidated merely because the alleged wrongful acts were committed, and their harmful effects were suffered, locally); *Carron v. Holland America Line-Westours, Inc.*, 51 F. Supp. 2d 322, 326 (E.D.N.Y. 1999) (holding that the fact that the litigant may have to pay a substantial amount for travel to the chosen forum does *not* prevent enforcement of the forum selection clause). Finally, plaintiffs' unsupported assertion that

---

[14] *Id.*, Tab 1 (Dorsch affidavit) ¶ 2; *see* 28 U.S.C. § 1391(a):

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*Id.*

[15] Plaintiffs' opposition to transfer, Tab A (Denton declaration) ¶ 6. Notably, there is no indication of whether plaintiffs' attorneys are working for an hourly fee or on a contingent-fee basis.

this action should not be transferred because Versa-Matic enjoyed a superior bargaining position is without merit. The cases enforcing forum selection clauses contained within contracts of adhesion are legion. *Cf., e.g., Shute,* 499 U.S. at 594, 111 S. Ct. at 1527-28 (forum selection clause printed on the reverse side of a cruise ship ticket enforced against passenger).

Accordingly, this court is of the opinion that the distributorship agreement executed by the parties should be enforced according to its terms, and that this action should be transferred to the United States District Court for the Western District of Pennsylvania. *See* 28 U.S.C. § 118. An appropriate order shall be entered contemporaneously herewith.

DONE this 26th day of February, 2003.

United States District Judge

-10-